FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL F.,[1]

                    Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,[2]

                    Defendant.

No.    1:23-cv-3135-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS AND REMANDING FOR FURTHER STEP 4/5 PROCEEDINGS**

        Plaintiff Michael F. claims he was unable to work fulltime from October 17, 2017, to May 1, 2021, due to mental-health impairments and seeks supplemental security income benefits. He appeals the denial of benefits by the Administrative

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for Kilolo Kijakazi as the defendant

Law Judge (ALJ) on the grounds that the ALJ improperly evaluated the medical-opinion evidence and his symptom testimony. As is explained below, the ALJ erred. This matter is remanded for further proceedings at steps 4 and 5.

## I.    Background

Plaintiff graduated from high school, began working at carnivals and delivered newspapers, and tried to join the military but was discharged prior to completing basic training for being disrespectful and not following orders.[3] Soon thereafter, Plaintiff was charged and convicted of a serious sex crime based on conduct as a juvenile and adult. He then served about nine years in prison, from about the ages of 20 to 29.[4] Upon release from prison in 2013, Plaintiff became involved in a relationship with a woman but when the relationship ended, he sent her a threatening text. He was subsequently convicted of felony harassment and served about three years in prison.[5] While in prison, Department of Corrections records indicate that Plaintiff struggled with suicidal ideation or attempts.[6]

---

[3] AR 66, 395, 813.

[4] AR 477.

[5] AR 361, 392, 395, 477.

[6] AR 368 ("He is impulsive in regard to self harming behavior and threats of self harm. He creates danger for himself by repeatedly making false accusations against others which places him [in] danger of harm from other offenders, and he demonstrates minimal insight into the ramifications of his behavior.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Upon release from prison in the fall of 2017, he resided at Camp Hope, a homeless shelter in Yakima, and he began attending church and engaging in medication management and individual and group therapy.[7] He also filed for disability benefits under Title 16. In January 2018, he began part-time, on-call work for a local theatre putting up and taking down sets; soon thereafter he began another part-time, on-call job for an events company setting up tents and chairs.[8] In the spring of 2018, Plaintiff moved into the House of Mercy in Yakima, a sober group home, and he reported doing good at an online school.[9] In March 2019, Plaintiff inappropriately asked a woman in his chemical dependency group to show her breast to him.[10] In mid-May 2018 and the end of June 2018, Plaintiff had committed probation violations and as a result had week-long stays in jail.[11] In the fall of 2018, Plaintiff withdrew from school because he fell behind.[12] In October 2018, he spent days in the Yakima County Jail.[13] After release, he resumed part-time, on-call work for both the theatre and the event center but he did not resume

15
16
17
18
19
20
21
22
23

---

[7] AR 377, 414, 488, 497.

[8] AR 377, 488.

[9] AR 618, 747, 755.

[10] AR 557.

[11] AR 615, 646, 655, 731–32.

[12] AR 715, 734.

[13] AR 593–602.

regular attendance at either group or individual therapy.[14] In early summer of 2019, Plaintiff began working at a restaurant as a dishwasher but this employment lasted only a few weeks because he was terminated in July 2019 after walking off the job when he was stressed about the amount of dishes to wash.[15] He again worked part-time, on-call for the theatre and the event company, but this event work became impacted by the COVID-19 pandemic. During medication-management sessions in April and July 2020, Plaintiff reported doing well with the isolation caused by the pandemic.[16] The alleged closed period of disability ended on May 1, 2021.

In August 2021, Plaintiff was hired by Macy's to restock merchandise; however, he was terminated in May 2022 after speaking to a female coworker inappropriately.[17] In the fall of October 2022, he obtained work at a fruit packing plant, and at the time of the second administrative hearing in December 2022, he was still working at the fruit packing plant as a graveyard sanitation worker.[18]

---

[14] AR 823, 830, 1378

[15] AR 837, 868–69, 1132–34, 1377.

[16]  AR 1215, 1223.

[17] AR 844, 937–41, 1165, 1309, 1321, 1333.

[18] AR 941–42, 1407.

## II.    Procedural History

In October 2017, at the age of 33, Plaintiff sought Title 16 benefits; he seeks disability benefits for the closed period from October 17, 2017, through May 1, 2021.[19] After the agency initially denied Plaintiff benefits, ALJ Raymond Souza held a hearing in March 2019 and February 2020.[20] At the first hearing in March 2019, Plaintiff stated that he had been working off and on for the theatre as a stagehand.[21] After discussion between the ALJ and counsel, the ALJ continued the hearing to allow Plaintiff an opportunity to submit additional records and for the ALJ to order a consultative psychological examination, including a WAIS-IV study.[22] In June 2019, Clinical Psychologist Emma Billings, PhD, conducted a psychological assessment of Plaintiff, including WMS-IV and Trail Making Part A and Part B testing; and in July 2019, Tasmyn Bowes, PsyD conducted a psychological/psychiatric evaluation.[23]

At the second administrative hearing in February 2020, Plaintiff reported that he worked part-time—about 8–10 hours a month—at a theatre helping put up

---

[19] AR 223–38. Plaintiff previously applied for Title 2 and Title 16 benefits in 2013; these applications were denied in 2016. AR 55–78.

[20] AR 32–51, 118–37, 875–907, 1123–42.

[21] AR 879.

[22] AR 891–92, 898.

[23] AR 1447–57, 1376–85

and take down sets, which was not performed at a fast pace.[24] Plaintiff testified that he would be able to work a full-time job if it was low-stress and had a supportive boss and coworkers.[25] Plaintiff stated that he needs time to learn a job and have instructions repeated even with a fairly simple job.[26] Plaintiff shared that he lost his dishwashing job at a restaurant after he walked off the job due to becoming stressed about the pile of dishes.[27]

Following the second hearing, ALJ Souza issued a decision denying benefits.[28] Plaintiff requested relief from the Appeal Counsel, which denied the requested review.[29] Plaintiff then filed suit; thereafter, a Stipulated Motion for Remand was granted.[30]

A third administrative hearing was held before ALJ Timothy Mangrum in December 2022.[31] Plaintiff and a vocation expert testified. Plaintiff testified that he can get distracted by things going on around him and he has a difficult time

---

[24] AR 38.

[25] AR 39–46.

[26] AR 44.

[27] AR 41-42.

[28] AR 12–29.

[29] AR 1–6.

[30] AR 976–95.

[31] AR 912, 930–51.

obtaining the necessary information from people of authority.[32] Plaintiff relayed that he had worked well at Macy's as a merchandiser for eight months, noting that he felt his supervisor and coworkers appreciated what he was doing and that he could ask for help when needed.[33] However, he was terminated from Macy's after making an inappropriate comment to a female coworker.[34] Plaintiff stated that he has had a problem with making inappropriate comments in the past.[35] He testified that he had been working at a fruit canning facility for the last two months, first working on the conveyor line and then in sanitation during the graveyard shift, working mostly by himself, and that his supervisor is helpful.[36] Plaintiff stated that his mental-health medication "helped a bunch" but that he has not been to counseling for a while as he did not think counseling helped.[37]

A vocational expert also testified. When asked about an occupation that required simple, work-related instructions, tasks, and decisions in a predictable work setting with only occasional changes in the work setting, 90% work

---

[32] AR 936.

[33] AR 937, 943–44.

[34] AR 940–41.

[35] AR 941.

[36] AR 941.

[37] AR 938.

productivity allowed, and occasional interaction with the public, coworkers, and supervisors, the vocational expert identified the job of agricultural produce sorter.[38]

After the hearing, the ALJ issued a decision denying benefits.[39] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[40] The ALJ considered the lay statements from Plaintiff's father and a state-agency interviewer and found them inconsistent with the record.[41] As to medical opinions, the ALJ found:

- the reviewing opinion of Eugene Kester, MD, and the evaluating opinion of Joan Billings, PhD, partially persuasive.

- the evaluating opinion of C. David Morgan, PhD, generally persuasive.

- the evaluating opinion of Tasmyn Bowes, PsyD, not persuasive.[42]

As to the sequential disability analysis, the ALJ found:

_____

[38] AR 947–48.

[39] AR 908–23. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[40] AR 918. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[41] AR 922-23.

[42] AR 920–22. The medical opinions are summarized below.

- Step one: Plaintiff had not engaged in a consecutive 12-month period of substantial gainful activity since October 17, 2017, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: depressive disorder, anxiety disorder, personality disorder, and attention deficit hyperactivity disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels, but he could only perform jobs requiring simple, work-related instructions, tasks, and decisions and occasional contact with the public, coworkers, and supervisors.

- Step four: Plaintiff could perform past relevant work as an agricultural sorter.[43]

### III.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[44] and such error impacted the nondisability

---

[43] AR 911–23.

[44] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

1  determination.[45] Substantial evidence is "more than a mere scintilla but less than

2  a preponderance; it is such relevant evidence as a reasonable mind might accept as

3  adequate to support a conclusion."[46]

4  ### IV.    Analysis

5      Plaintiff argues the ALJ improperly evaluated the medical-opinion evidence

6  and improperly rejected Plaintiff's symptom testimony. The Commissioner argues

7  the ALJ reasonably discounted the medical opinions that were not well-supported

8  or consistent with the evidence and reasonably discounted Plaintiff's allegations of

9  extreme mental limitations. As is explained below, substantial evidence does not

10 support the ALJ's assessment of the opined limitations pertaining to Plaintiff's

---

12 [45] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other*

13 *grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

14 ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

15 nondisability determination").

16 [46] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

17 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

18 court "must consider the entire record as a whole, weighing both the evidence that

19 supports and the evidence that detracts from the Commissioner's conclusion," not

20 simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

21 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

22 not indicate that such evidence was not considered[.]").

insight/judgment and his abilities to interact with others and manage his behavior. The errors were consequential.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ selectively reviewed the evidence and as a result his assessment of the medical opinions by Eugene Kester, MD, Joan Billings, PhD, Tasmyn Bowes, PsyD, and David Morgan, PhD, was not supported by substantial evidence and contained legal error. The Commissioner responds that the ALJ appropriately considered the medical record, including the shown improvement in symptoms and Plaintiff's own reports of improvement, and Plaintiff's activities. As is discussed below, the medical opinions during the relevant period agreed that Plaintiff's social-interaction and behavior-management limitations were greater than those included in the RFC. The ALJ failed to consider these opined limitations fully and fairly against the entire record, instead comparing the opined limitations to cherry-picked portions of the record. The ALJ's findings are not supported by substantial evidence.

1.    Standard

An ALJ must consider and articulate how persuasive he found each medical opinion.[47] The factors for evaluating the persuasiveness of medical opinions and

---

[47] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating

prior administrative medical findings include, but are not limited to,

supportability, consistency, relationship with the claimant, and specialization, with

supportability and consistency being the most important factors. [48] When

considering the ALJ's findings, the Court is constrained to the reasons and

supporting explanation offered by the ALJ. [49]

### 2. Medical Opinions

#### a. Dr. Kester

In March 2018, Dr. Kester reviewed the then-current medical evidence of

record and diagnosed Plaintiff with "depressive, bipolar and related disorders,"

"anxiety and obsessive-compulsive disorders," and "personality disorders." [50] As to

functional abilities, Dr. Kester found that Plaintiff could continue to understand,

remember, and carry out simple 1-to-3 step instructions, should have very minimal

public contact, should not interact with coworkers and supervisors regularly in a

cooperative/team effort, and should be limited to few work-setting changes. [51]

---

doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence.").

[48] 20 C.F.R. § 416.920cb(2), (c)(1)–(5).

[49] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

review is constrained to the reasons the ALJ gave).

[50] AR 92.

[51] AR 96.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

b.    *Dr. Billings*

In June 2019, Dr. Billings conducted a psychological assessment, which included reviewing Department of Corrections records from January to September 2017 and treatment records from November 2017 to September 2018 and conducting a clinical interview, WMS-IV and other testing, and a mental-status examination. [52] Dr. Billings diagnosed Plaintiff with ADHD, major depressive disorder (recurrent episode, mild), antisocial personality disorder, and alcohol use disorder (moderate, four months abstained). Dr. Billings opined that Plaintiff was markedly limited in his ability to interact appropriately with co-workers and moderately impaired with understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with supervisors; and responding appropriately to usual work situations and to changes in a routine work setting.[53] Dr. Billings stated that Plaintiff "showed inattention and concentration among those activities where it is most needed. He was impulsive in some of his responses resulting in errors. It was necessary to repeat directions to him several times during the testing."[54]

---

[52] AR 1447–57.

[53] AR 1455–56.

[54] AR 1453.

1

       c.    <u>Dr. Bowes</u>

2      A month after Dr. Billings' assessment, Dr. Bowes conducted a psychological

3 evaluation, which included a clinical interview and a mental status examination

4 with Trails A and B and other testing, but no record review.[55] Dr. Bowes diagnosed

5 Plaintiff with unspecified neurocognitive disorder (ADHD/autism spectrum) and

6 rule-out borderline personality disorder.[56] Dr. Bowes opined that Plaintiff was

7 moderately limited in his ability to make simple work-related decisions and to

8 understand, remember, and persist in tasks by following very short and simple

9 instructions.[57] Dr. Bowes also opined that Plaintiff was markedly limited in his

10 ability to learn new tasks, perform routine tasks without special supervision, adapt

11 to changes in a routine work setting, communicate and perform effectively in a

12 work setting, maintain appropriate behavior in a work setting, complete a normal

13 work day and work week without interruptions from psychologically based

14 symptoms, set realistic goals and plan independently; understand, remember, and

15 persist in tasks by following detailed instructions; and perform activities within a

16 schedule, maintain regular attendance, and be punctual within customary

17 tolerances without special supervision.[58] Dr. Bowes observed Plaintiff with possible

18 ────────────────────

19 [55] AR 1376–81.

20 [56] AR 1378.

21 [57] AR 1379.

22 [58] *Id.*

23

mild level cognitive deficits based on Trails A and B testing, rigid thinking and presentation, social awkwardness, and marginal eye contact and insight.[59]

### d.  *Dr. Morgan*

In October 2022, about one-and-a-half years after the alleged closed-disability period, Dr. Morgan conducted a psychological examination, including a clinical interview, a mental-status examination, and review of undefined "DSHS records."[60] Dr. Morgan diagnosed Plaintiff with unspecified anxiety disorder and persistent depressive disorder and opined that Plaintiff was moderately limited in his abilities to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal workday and work-week without interruptions from psychologically based symptoms, and understand, remember, and persist in tasks by following detailed instructions.[61]

### 3.  ALJ's Findings

Although each of the doctors who provided an opinion as to Plaintiff's functional abilities during the relevant period found that Plaintiff had marked or moderate social and communication/adaption limitations, the ALJ found these

---

[59] AR 1377–81.

[60] AR 1386–90. Dr. Morgan's comments in his report do not shed light as to what DSHS records he reviewed.

[61] AR 1387–88.

assessed limitations were not fully supported by the record. Instead, the ALJ found:

- Dr. Kester's opinions that Plaintiff have "very minimal" contact with the public and not work in a cooperative/team effort to be inconsistent with the medical evidence and Plaintiff's activities.[62]

- Dr. Billings' opinion that Plaintiff was markedly limited in his ability to interact with coworkers not consistent with the record, and her check-box opinion that Plaintiff's abilities to adapt/manage himself or concentrate, persist, and maintain pace were limited, was not explained and could not be interpreted in concrete vocational terms.

- Dr. Bowes' opined marked social-interaction and adaptation limitations were not supported because she only saw Plaintiff on a single occasion; Dr. Bowes did not review any records or provide specific rationale for each assessed limitation; the assessed limitations were inconsistent with her examination findings, the longitudinal treatment record, and Plaintiff's activities; and her opinion as to difficulties completing a normal workday/workweek and maintaining attendance was unsupported, did not reflect a precise vocational restriction, and was a legal conclusion reserved to the Commissioner.

---

[62] AR 918–21.

DISPOSITIVE ORDER - 16

- Dr. Morgan's assessment was persuasive except for the opined limitations with communicating/performing effectively in a work setting because they were not supported by the mental-status examination and were inconsistent with the longitudinal treatment record and Plaintiff's activities; and his opined limitations as to completing a normal workday/workweek and maintaining attendance were unsupported, did not reflect a precise vocational restriction, and was a legal conclusion reserved to the Commissioner.[63]

4. _Analysis_

Although the ALJ accurately summarized the medical record as it pertains to Plaintiff's typically normal affect and mood, the ALJ failed to meaningfully discuss the portions of the record reflecting that Plaintiff's limited insight and judgment impacted his ability to appropriately interact with others and maintain appropriate behavior. By not considering Plaintiff's generally limited insight and judgment, his social awkwardness as observed by the examining sources, and his difficulty maintaining employment and abiding by DOC conditions, the ALJ "cherry picked" evidence.[64]

---

[63] AR 1379–80.

[64] _See Gallant v. Heckler_, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record).

DISPOSITIVE ORDER - 17

First, the ALJ erroneously found that Plaintiff's insight and judgment were "normal," stating "[H]e presented as relaxed, attentive, and polite, with normal eye contact, speech, affect, judgment, attention, concentration, and memory," and "He had normal speech, psychomotor activity, memory, concentration, insight, and judgment."[65] In comparison, treatment notes reflect that Plaintiff's insight and judgment were more often found to be poor, fair-to-poor, or fair.[66] One of the

---

[65] *See* AR 919.

[66] *Compare the normal insight/judgment findings*: AR 414 (9/8/17: "judgment and insight appeared intact . . . His judgment and insight were fair to good"), AR 1364 (11/8/17: "[i]nsight and judgment are considered fair to good"), AR 757 (6/21/18: "The client has fair judgment and has good insight recognizing his need for treatment and medication management (no money, housing, family conflict, vocational grief/loss, illness, transition) related stressors"), AR 860 (10/10/19: insight and judgment "within normal limits"), AR 847 (10/22/19: insight and judgment: "good"), AR 856 (11/5/19: insight and judgment "within normal limits"); *with the fair to poor insight/judgment findings*: AR 489, 498, 568 (12/14/17, 1/9/18, and 2/16/18: Insight and judgement are deemed to be fair given history), AR 619, 826, 833, 840, 1210, 1214, 1226, 1234, 1242, 1315, 1339 (5/4/18, 1/28/19, 4/29/19, 7/30/19, 1/14/20, 4/14/20, 7/7/20, 10/6/20, 2/2/21, 1/24/22, and 7/25/22: insight and judgment: "fair"), AR 1253, 1267 (5/10/21 and 7/12/21: insight and judgment: "fair to poor").

records relied on by the ALJ to support his finding that Plaintiff's insight and

judgment were normal was a DOC record prepared by a counselor on September

18, 2017.[67] Yet, the very next day DOC psychologist Patricia Zeisler, PsyD,

completed a more comprehensive Behavioral Health Discharge Summary.

Dr. Zeisler highlighted that Plaintiff had attempted (or threatened) suicide in

March 2017 when he was in custody, and that on the date of his examination with

her, he presented with blunted affect, demonstrated minimal insight, and:

> He appears to have the most deficits in his social skills as evidenced
> by him appearing socially awkward, embellishing some of his history,
> poor peer relationships, and interest in more technical things such as
> computers. His social interactions lack reciprocity, eye contact was
> marginal, and difficulties with developing and maintaining
> relationships (his report). He does seem easily overstimulated and
> appreciates routine.[68]

By not discussing that the medical record reflected that Plaintiff usually had poor

to fair judgment and insight rather than normal judgment and insight, the ALJ

cherrypicked the record on this critical point, i.e., to what extent did Plaintiff's

impaired judgment and insight limit his ability to interact appropriately with

others and manage his behavior while working.

Second, the ALJ failed to meaningfully evaluate the examining medical

sources' findings and opinions about Plaintiff's lack of insight and judgment and

his difficulties interacting appropriately with others. For instance, when

---

[67] AR 919 (citing AR 414).

[68] AR 353–56.

discounting Dr. Billings' opined limitations, including the marked limitation as to interacting appropriately with coworkers, the ALJ did not discuss that Dr. Billings observed Plaintiff to show inattention and concentration problems during the psychological testing and interview and that he sometimes impulsively responded to questions, he had a flat affect, and he was unable to interpret the two asked proverbs.[69] Likewise, when discounting Dr. Bowes' opined marked limitations, the ALJ did not meaningfully discuss why the normal findings pertaining to mood, affect, speech, and thought content were more relevant to Dr. Bowes' opined social-interaction limitations than Plaintiff's rigid thinking/presentation, socially awkward behavior, marginal eye contact, and marginal insight.[70] Moreover, based on the same records as reviewed by Dr. Billings, Dr. Kester found that Plaintiff had limitations interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting, and therefore, Dr. Kester recommended that Plaintiff have very minimal contact with the public, not interact with coworkers and supervisors in a cooperative/team effort, and have few work setting changes.[71] The ALJ's reliance on Dr. Morgan's

---

[69] AR 1447–57.

[70] AR 1376–81.

[71] AR 95–97.

post-period opinion to show improvement during the relevant closed-disability

period is misplaced given that Dr. Morgan evaluated Plaintiff about one-and-a-half

years after the relevant period.[72] On this record, the ALJ's finding that the medical

sources' more restrictive social-interaction limitations were inconsistent with the

medical record is not supported by substantial evidence.

Third, on this record, it was not adequate for the ALJ to summarily

find that Dr. Bowes' opinion was poorly supported because she did not

review any records and summarily find that Dr. Billings' opinion was

insufficiently supported because it was based on "history."[73] Both Dr. Bowes

and Dr. Billings conducted psychological examinations, including a clinical

interview, cognitive testing, and a mental-status examination—and they

completed reports summarizing Plaintiff's statements, their observations,

and the test results.[74] In addition, Dr. Billings reviewed DOC and treatment

records. Nonetheless, the ALJ found Dr. Billings' marked limitation for

interacting with coworkers unsupported because Dr. Billings wrote "history"

---

[72] *Cf. Smith v. Kijakazi*, 14 F.4th 1108, 1112-14 (9th Cir. 2021).

[73] AR 921.

[74] *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (concluding that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness").

as the support for this limitation on the Medical Source Statement.[75]

Dr. Billings' check-box opinion must be considered along with her written

report, which notes that she observed Plaintiff as impulsive in his response

to questions with stiff posture and inattention and concentration problems

during testing, and summarizes her review of DOC records, which state that

Plaintiff had "emotional reactivity and poor social skills in regard to

managing difficult interactions with others" and "unit and MH staff have

worked hard to provide appropriate support with little impact to [Plaintiff's]

ability to manage himself."[76] Dr. Billings was aware that Plaintiff lived in a

group home, performed shared group-home chores, participated in group

therapy, and attended church. Even in light of these activities, Dr. Billings

found Plaintiff's social abilities moderately and markedly limited. On this

record, the ALJ's finding that Dr. Billings' opinion was unsupported because

she wrote "history" under the check-box limitation is not supported by

substantial evidence, and the summary finding that Dr. Bowes' opinion was

poorly supported because she only saw Plaintiff once and did not review

records is not supported by substantial evidence.

    In reaching his findings, the ALJ gave undue weight to the fact that Plaintiff

often reported to treating providers that things were going well. The medical record

---

[75] AR 921 (citing AR 1366).

[76] AR 1448–57.

reflects—and it is the opinion of the medical sources—that Plaintiff's insight, both in general and more specifically about appropriate social behavior, is limited.[77] Therefore, relying on Plaintiff's self-reports about his mental health should have been shied away from, particularly when the record reflects, based on the events that were going on in his life during the times that he claimed to be doing well, that Plaintiff was not doing as well as he claimed, i.e., he was terminated from employment due to inappropriate conduct and/or had recently been in jail. His decision to stop individual and group therapy was less of a reflection of improved mental status and more related to his limited insight and judgment about his mental health.[78]

Fourth, the ALJ found the more restrictive social-interaction limitations imposed by Dr. Kester, Dr. Billings, Dr. Bowes, and Dr. Morgan inconsistent with Plaintiff's activities, namely his ability to reside in a group home, attend church activities, be active in group therapy meetings, use

---

[77] See Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

[78] AR 939–40 (testifying that he did not appreciate that counseling was helping him). See Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1209-1300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

public transportation, and shop for himself. Yet, during this same time frame, Plaintiff was incarcerated on three occasions for DOC violations, had an incident with another resident at Camp Hope Shelter which required the involvement of the camp director, was occasionally distracted during group therapy, inappropriately asked a woman in his group therapy to show her breast to him, began and then discontinued online college within months, started and ended a handful of jobs, and expressed suicidal ideation during the at-issue period.[79] Moreover, after the alleged disability period, Plaintiff was terminated from a job due to inappropriate conduct toward a female coworker.[80] In addition, the examining psychologists were aware of Plaintiff's activities. Based on this record, the activities the ALJ relied on do not constitute substantial evidence to support his finding that the medical opinions were inconsistent with Plaintiff's activities.[81]

---

[79] *See, e.g.*, AR 488, 557, 563, 593, 611, 618, 655, 715, 722, 730, 734, 757, 823, 830, 837, 844, 1207.

[80] AR 1333.

[81] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

Finally, the ALJ's discounting of Dr. Morgan's, Dr. Bowes', and Dr. Billings' assessed limitations in concentration, persistence, and pace, or in completing a normal workday/workweek, maintaining attendance, or adapting/managing oneself, because they were "essentially a finding that the claimant cannot work on a consistent basis, which is a legal conclusion that is reserved to the Commissioner" is not a legitimate reason supported by substantial evidence for discounting these assessed limitations.[82] One's ability to perform the mental demands of work activities including maintaining concentration, persistence, or pace and responding appropriately to supervision, coworkers, or work pressures must be considered—and a medical source's opinion on these abilities is relevant.[83] The medical opinions here offered more than simply a statement as to whether

---

[82] AR 921–22.

[83] 20 C.F.R. § 916.913(a)(2)(i)(B). *See also* SSA Program Operations Manual System DI 25020.010, available at https://secure.ssa.gov/poms.nsf/lnx/0425020010; SSR 85-15: Titles II and XVI: Capability to do Other Work—the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments ("Similarly, an individual who cannot tolerate being supervised may be not able to work even in the absence of close supervision; the knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, can be intolerated for some mentally impaired persons.").

1    Plaintiff was "able to perform regular or continuing work."[84] This was not an

2    adequate basis to discount the opinions of these examining psychologists as to

3    Plaintiff's limitations related to his impaired insight, judgment, social abilities, and

4    behavioral management.

5          In summary, although an ALJ need not address every piece of evidence, an

6    ALJ "may not ignore significant probative evidence that bears on the disability

7    analysis."[85] Without fully and fairly discussing the medical evidence related to

8    Plaintiff's impaired judgment, insight, social interactions, and behavioral

9    management, the ALJ "cherrypicked" the evidence. The ALJ's analysis of the

10   medical opinions was impacted by his reliance on his finding that Plaintiff had

11   "normal" insight and judgment and his self-reports of doing well, rather than on

12   the medical evidence supporting the opined limitations.

13         The ALJ's errors were consequential. The RFC failed to incorporate the more

14   limiting social-interaction, behavioral-management limitations opined by

15   Dr. Kester, Dr. Billings, and Dr. Bowes during the at-issue period. The RFC's

16   nonexertional limitations were: "jobs requiring simple, work-related instructions,

17   tasks, and decisions" and "occasional contact with the public, coworkers, and

18   supervisors."[86] This RFC does not reflect:

19

20   [84] 20 C.F.R. § 416.920b(c)(3).

21   [85] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

22   [86] AR 917.

23

- Dr. Kester's opinion that Plaintiff be limited to very minimal public contact, no cooperative/team effort work, and few work-setting changes.

- Dr. Billings' opinion that Plaintiff was markedly limited in his ability to interact appropriately with coworkers.

- Dr. Bowes' opinion that Plaintiff was markedly limited in the ability to perform routine tasks without special supervision, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting.

The hypothetical the ALJ presented to the vocational expert was slightly more restrictive than the RFC as the hypothetical also called for a "predictable work setting with only occasional changes in the work setting."[87] To this hypothetical, the vocational expert identified agricultural produce sorter as an available occupation—and this is the occupation that the ALJ found that Plaintiff could perform at step four. Yet, the ALJ did not ask the vocational expert whether a significant number of agricultural sorter positions remain if Plaintiff is more limited socially, such as to very minimal public contact and no cooperative/teamwork with coworkers as opined by Dr. Kester, and less than

---

[87] AR 947–48.

occasional interaction with coworkers as opined by Dr. Billings—restrictions that are consistent with Dr. Bowes' marked limitations.

Because the ALJ failed to consider the evidence fully and fairly, the ALJ's discounting of the medical sources' more restrictive limitations is not supported by substantial evidence.

**B.      Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ ignored evidence about his social-interaction difficulties and as a result the ALJ's reasons for discounting his symptoms are not clear and convincing reasons.[88] The Commissioner argues the ALJ appropriately evaluated the conflicting evidence of record. As is explained below, the rationale provided by the ALJ is not clear enough to have the power to convince.

1.      <u>Standard</u>

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[89] This requires the ALJ to "show his work" and

---

[88] AR 353, 368, 374, 557, 940, 1335.

[89] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any

provide a "rationale . . . clear enough that it has the power to convince" the

reviewing court.[90]

2.    Plaintiff's Symptom Reports

Plaintiff's testimony at the hearings is summarized above. He also completed

two Adult Function Reports. In one report, he stated, "When I get agitated or

depressed I would not want to come into work and when my anxiety rises I can't

follow directions or I go off and do things that don't pertain to the job at hand."[91] In

addition, he noted that he gets distracted easily, swears, gets into fights, has a

hard time remembering things, does not always complete tasks, does not follow

spoken instructions well, does not handle stress or changes in routine well, but

that he does get along well with authority figures.[92] In the second Adult Function

---

medication the claimant takes or has taken to alleviate pain or other symptoms; 5)

treatment, other than medication, the claimant receives or has received for relief of

pain or other symptoms; 6) any non-treatment measures the claimant uses or has

used to relieve pain or other symptoms; and 7) any other factors concerning the

claimant's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c); *Ghanim v.*

*Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

[90] *Smartt*, 53 F.4th at 499 (alteration added).

[91] AR 276.

[92] AR 276–83.

Report, he shared similar information: that he needs constant supervision at work, has a hard time completing tasks because he gets easily distracted, gets angry easily, has a hard time understanding some things, does not follow spoken instructions well, does not handle stress or changes in routine well, and gets along well with authority figures.[93]

### 3.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his medically determinable impairments not entirely consistent with the medical evidence and Plaintiff's activities.[94]

In its response, the Commissioner suggests that the ALJ gave other reasons for discounting Plaintiff's symptoms: Plaintiff reported more minimal symptoms to treating providers than he testified to and Plaintiff's lack of work was due to his legal history not his mental impairments.[95] But the ALJ did not specifically discount Plaintiff's reported symptoms for these reasons. The only two reasons specified by the ALJ were that Plaintiff's alleged functional limitations were inconsistent with the medical evidence and his activities. It is not enough that the ALJ highlight certain aspects of the medical evidence that contain varying reports of symptom severity or highlight comments by Plaintiff about the negative impact

---

[93] AR 303–10.

[94] AR 918–20.

[95] ECF No. 10 at 5–6.

1    that his legal history has on his ability to get a job. Rather, the ALJ must

2    specifically articulate that he is discounting Plaintiff's symptoms for that reason,

3    with that reason being a clear and convincing reason supported by substantial

4    evidence.[96]

5        The Court reviews the two reasons specifically relied on by the ALJ for

6    discounting Plaintiff's alleged functional limitations: that they were inconsistent

7    with the medical evidence and his activities.[97]

8        4.    Analysis

9            a.    *Objective Medical Evidence*

10        Objective medical evidence—signs, laboratory findings, or both—is a

11    relevant factor for the ALJ to consider when assessing a claimant's symptoms.[98] An

12    ALJ may consider discrepancies between a claimant's reported symptoms and the

---

[96] *See Smartt*, 53 F.4th at 499.

[97] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court
review is constrained to the reasons the ALJ gave); *Bray v. Comm'r of Soc. Sec.
Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009) ("Long-standing principles of
administrative law require us to review the ALJ's decision based on the reasoning
and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt
to intuit what the adjudicator may have been thinking.").

[98] 20 C.F.R. § 416.902(k), (l); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of
objective medical evidence (2019).

observations of treatment providers.[99] A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms."[100] Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[101]

Here, the ALJ found the medical evidence inconsistent with Plaintiff's alleged functional limitations. The ALJ summarized medical records and found that although on rare occasion Plaintiff had blunted or anxious affect, he usually presented at appointments with normal mental-health findings, including a stable mood, congruent affect, cooperative, normal psychomotor activity, normal eye contact, normal speech, and that he was engaged in a session, made significant progress toward treatment goals, felt upbeat, had a normal appearance, was calm,

---

[99] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[100] 20 C.F.R. § 416.929(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[101] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

and had good memory and concentration.[102] The ALJ also highlighted that Plaintiff's cognitive testing performed by Dr. Billings indicated average cognitive function and low average memory.[103] The ALJ found that Plaintiff's generally benign presentation was not consistent with his allegations regarding limitations with social interaction and cognitive function.[104]

As is discussed above, the ALJ's finding that Plaintiff's insight and judgment were normal is not supported by substantial evidence. Because the heart of this disability application is whether Plaintiff has the insight/judgment to interact appropriately with coworkers and adapt to situations at work while retaining sufficient focus and pace, this error consequentially impacted the ALJ's decision to discount Plaintiff's reported symptoms.[105]

---

[102] AR 919.

[103] AR 920.

[104] AR 919.

[105] *See Ghanim*, 763 F.3d at 1164 (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness …, he cannot reach a conclusion first, and

b. _Activities of Daily Living_

The ALJ may discount a claimant's reported disabling symptoms if he can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms.[106] But "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."[107]

Like his finding that the medical opinions were inconsistent with Plaintiff's activities, the ALJ discounted Plaintiff's alleged difficulties interacting with other people and remaining focused because he was able to live in a sober-living group home, perform household chores, be involved with church, use public transportation, and shop for himself. On this record, which includes evidence of Plaintiff's repeated incarceration, difficulty holding a full-time job during the relevant period notwithstanding repeated work efforts, and often observed fair or poor insight/judgment, these cited activities do not constitute substantial evidence supporting the ALJ's decision to discount Plaintiff's reported social/interaction difficulties during the relevant period. The ALJ failed to provide a rationale clear enough to convince the reviewing court that Plaintiff's activities are inconsistent

---

then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

[106] _Molina_, 674 F.3d at 1113.

[107] _Reddick v. Chater_, 157 F.3d 715, 722 (9th Cir. 1998) (cleaned up).

with his reported difficulty maintaining appropriate behavior and staying on task

at work.

**C.    Remand: further proceedings at steps four and five.**

Plaintiff seeks a remand for payment of benefits. The Court declines to do so.

But the Court credits the more restrictive social restrictions opined by the medical

sources during the relevant period. Giving credit to the social-interaction

limitations opined by the medical sources is appropriate because this is the second

remand by a district court and because the medical opinions about Plaintiff's

moderate and/or marked social-interaction and adaption/behavioral-management

limitations during the past closed-period were largely consistent with each other.[108]

Therefore, remand is limited to the issue of whether there are a significant number

of jobs available in the national job that Plaintiff can perform based on the

following RFC:

> A full range of work at all exertional levels with the following
> nonexertional limitations:
>
> - simple, work-related instructions, tasks, and decisions;
> - very minimal public contact;
> - very minimal contact with coworkers;
> - occasional interaction with supervisors; and
> - few work setting changes.

---

[108] *See Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009); *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide

the issue again would create an unfair 'heads we win; tails, let's play again' system

of disability benefits adjudication.").

The only needed record development is determining whether there is available work that exists in significant numbers in the national economy based on this RFC, Plaintiff's age, education, and work experience. [109] The ALJ is to obtain vocational expert testimony (or answers to written interrogatories) on this point.

## V.    Conclusion

Plaintiff establishes the ALJ erred. Because of the repeated remand and because each of the medical opinions during the relevant period imposed moderate and/or marked social-interaction limitations, the limitations are credited and the ALJ is to utilize the RFC set forth above and obtain vocational expert testimony/answers as to whether there is available work in significant numbers that Plaintiff can perform.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)** for step four and step five only of the disability analysis.

///

//

/

---

[109] *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (discussing remand standards).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this _6th_ day of March 2024.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge